IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
<u>SOUTHERN DIVISION</u>

| | |
|---|---|
| **MALIBU MEDIA, LLC,**<br><br>    Plaintiff,<br><br>    v.<br><br>**JOHN DOE**,<br><br>    Defendant. | Civil Action No.<br>1:13-cv-00364-RJJ<br><br>Hon. Robert J. Jonker<br>United States District Judge |

PAUL J. NICOLETTI (P44419)
NICOLETTI & ASSOCIATES, PLLC
Attorneys for the Plaintiff
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 203-7800
Fax: (248) 203-7801
Email:  paul@nicoletti-associates.com

ERIC C. GRIMM (P58990)
WILLIAMS | HUGHES, PLLC
Attorneys for Movants Comcast
Subscriber Alpha and Spouse
120 West Apple Avenue
P.O. Box 599
Muskegon, MI 49443-0599
231.728.1111
Fax: 231.727.2111
Email:
ecgrimm@williamshugheslaw.com

**MOTION AND SUPPORTING BRIEF OF COMCAST SUBSCRIBER ALPHA, AND SPOUSE, FOR AN EXTENSION OF TIME, MOTION TO QUASH OR TO <u>MODIFY SUBPOENA, AND MOTION FOR PROTECTIVE ORDER</u>**

      Movants, Comcast Subscriber Alpha ("Subscriber"), and the Subscriber's Spouse (collectively, the "Household"), through counsel, respectfully move for an extension of time.

      Comcast has set an arbitrary deadline of May 30, 2013, to file a motion to quash or modify, in order for the Subscriber's personally-identifiable information not to be turned over to the Plaintiff. Counsel was retained by Subscriber only a matter of days prior to the Memorial Day 3-day weekend. Additional time will enable the Subscriber, Counsel and

**Motion to Quash and for Protective Order**,
*in* <u>Malibu Media, LLC v Doe</u>,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

Spouse to prepare a more thorough Motion to Quash and for Protective Order, including additional briefing on key issues. We respectfully pray for a reasonable amount of additional time to prepare a more thorough and comprehensive Motion to Quash and for Protective Order, and to substitute said motion for this motion.

Alternatively, and so as to ensure that Comcast does not violate the privacy of the Subscriber and the Subscriber's Spouse while additional briefing is in preparation, we respectfully move to quash the subpoena that has been served on Comcast, or to modify the subpoena. In the alternative, the Subscriber and Spouse respectfully move for a Protective Order under Rule 37(c) of the FEDERAL RULES OF CIVIL PROCEDURE, so as to cause disclosure of information about the Subscriber's computer network and such information (if any) about copyrighted works as may be known or readily knowable by the Subscriber, to take place anonymously, and without disclosure of the Subscriber's identity. In other words, a subscriber who is represented by counsel is differently-situated than an unrepresented subscriber. With counsel involved, and able to serve as a point of contact, just like in a trade secrets case, it is possible to proceed in a meaningful way without disclosing particularly sensitive information (here, the Subscriber's identity itself).

A protective order can be carefully crafted so as to disclose such information as is really necessary to determine whether it is possible for Plaintiff's case to go any farther, without actually disclosing information (such as identity) that is not truly essential under the circumstances.

Movants reserve the right to supplement this Motion to Quash and for Protective Order, with additional briefing, within a reasonable time. All rights and remedies are

-2-

**Motion to Quash and for Protective Order**,
*in* Malibu Media, LLC v Doe,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

respectfully reserved.

        Respectfully submitted,

        __/s/ Eric C. Grimm_____
        ERIC C. GRIMM (P58990)
        WILLIAMS | HUGHES, PLLC
        Attorneys for Movants Comcast Subscriber Alpha and Spouse
        120 West Apple Avenue
        P.O. Box 599
        Muskegon, MI 49443-0599
        231.728.1111
        Fax: 231.727.2111
        Email:
        ecgrimm@williamshugheslaw.com

## **CERTIFICATE OF COUNSEL**

    I certify that I sought in good faith to confer with counsel for the Plaintiff, prior to filing this Motion for Protective Order. Rather than attempting to discuss the matter in a constructive way, Plaintiff counsel merely threatened to raise an already-unreasonable demand for payment of money (more than three times what most so-called "copyright trolls" demand on average, and more than fourteen times some recent settlements we have seen), by doubling the demand, if the Subscriber had the temerity to seek justice in court.

        __/s/ Eric C. Grimm_____
        Eric C. Grimm (P58990)
        Counsel for the Movants.

-3-

**Motion to Quash and for Protective Order**,
*in* Malibu Media, LLC v Doe,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
<u>SOUTHERN DIVISION</u>**

| | |
|---|---|
| **MALIBU MEDIA, LLC,**<br><br>    Plaintiff,<br><br>    v.<br><br>**JOHN DOE**,<br><br>    Defendant. | Civil Action No.<br>1:13-cv-00364-RJJ<br><br>Hon. Robert J. Jonker<br>United States District Judge |

PAUL J. NICOLETTI (P44419)
NICOLETTI & ASSOCIATES, PLLC
Attorneys for the Plaintiff
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel: (248) 203-7800
Fax: (248) 203-7801
Email:  paul@nicoletti-associates.com

ERIC C. GRIMM (P58990)
WILLIAMS | HUGHES, PLLC
Attorneys for Movant Comcast Subscriber
Alpha and Spouse
120 West Apple Avenue
P.O. Box 599
Muskegon, MI 49443-0599
231.728.1111
Fax: 231.727.2111
Email: ecgrimm@williamshugheslaw.com

**MEMORANDUM IN SUPPORT OF MOTION OF COMCAST SUBSCRIBER
ALPHA AND SPOUSE FOR AN EXTENSION OF TIME, MOTION TO QUASH
OR TO MODIFY SUBPOENA, AND MOTION FOR PROTECTIVE ORDER**

Movants, Comcast Subscriber Alpha ("Subscriber"), and the Subscriber's Spouse (collectively, the "Household"), through counsel, respectfully move for an extension of time.

Comcast has set an arbitrary deadline of May 30, 2013, to file a motion to quash, in order for the Subscriber's personally-identifiable information not to be turned over to the Plaintiff. Counsel was retained by Subscriber only a matter of days prior to the Memorial Day 3-day weekend. Additional time will enable the Subscriber, Counsel and Spouse to

-4-

**Motion to Quash and for Protective Order**,
*in* <u>Malibu Media, LLC v Doe</u>,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

prepare a more thorough Motion to Quash and for Protective Order. We respectfully pray for a reasonable amount of additional time to prepare a more thorough and comprehensive Motion to Quash and for Protective Order, and to substitute said motion for this motion.

Alternatively, and so as to ensure that Comcast does not violate the privacy of the Subscriber and the Subscriber's Spouse while additional briefing is in preparation, we respectfully move to quash or to modify the subpoena that has been served on Comcast.

Like virtually all subpoenas that get served in the flood of BitTorrent cases, around the country, the subpoena in this case was issued based on the basis of an *ex parte* motion, without the benefit of briefing on both sides.

When the issues in a Bit Torrent lawsuit receive proper, adversarial, briefing, and the judge can have the benefit of all the facts and the law – rather that the one-sided and distorted perspective offered only by the plaintiffs – outcomes have been known to turn out somewhat differently. E.g., Order (Oct 10, 2010) (Doc. Ent. 3) (order requiring public interest counsel to brief subpoena-related issues as *ad litem* attorneys), *in* Mick Haig Productions, e.K. v. Does 1-670, No. 3:10-cv-01900-N (N.D. Tx. *filed* Sep. 21, 2010), *subsequent proceeding*, 2011 WL 5104095 (N.D. Tex. Sep. 9, 2011), *aff'd*, 687 F.3d 649 (5th Cir. 2012) (describing business model of lawyer representing pornographic movie companies as a "strategy of suing anonymous internet users for allegedly downloading pornography illegally, using the powers of the court to find their identity, then shaming or intimidating them into settling for thousands of dollars – a tactic . . . employed all across the state and that has been replicated by others across the country"); see also AF Holdings, LLC v. Ciccone, 4:12-cv-14442-GAD-MKM (E.D. Mich. *filed* Oct. 7, 2012) (lawsuit seeking identities of 300

-5-

Motion to Quash and for Protective Order, *in* Malibu Media, LLC v Doe, C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

cable subscribers dismissed in its entirety, without disclosure, after defense counsel provide court with more balanced view of what's really at issue). Especially with supplemental briefing that is already in preparation, we are optimistic that the Court may have an opportunity to consider some additional information, too, and to revisit seriously whether an identity subpoena actually is warranted, and whether the Plaintiff actually made an adequate evidentiary showing to support a subpoena.

Simply put, it is not sufficient for the Plaintiff to allege that copyright infringement <u>by someone</u> took place using a particular IP address. And that's all Plaintiff is able to allege. An IP address is not a person, and certainly is not an adequate surrogate for the subscriber.

The term <u>cable subscriber</u>, in this motion, is used for a purpose, and is intended to distinguish the concept of a subscriber, from a "Doe" accused of copyright infringement. To help illustrate the point that the mistake of confusing an IP Address with a person (in other words, to assume mistakenly that all traffic through a subscriber's cable account necessarily comes from that subscriber), we respectfully urge the Court to watch a brief clip from the NBC televison network, describing a federal law enforcement raid gone wrong in Sarasota, Florida. See < http://video.today.msnbc.msn.com/today/41985312 >.

In the Sarasota case, the owner of a condominium overlooking the water – Malcolm Riddell – one day had his condominium raided by federal agents who, with firearms displayed, commenced questioning him about child pornography. It turns out that the federal officials mistakenly thought (and mistakenly persuaded a judge – which again illustrates the risks associated with *ex parte* submissions), that by obtaining the IP address from which downloads of illegal content were observed to occur, they had positively identified the cable

-6-

**Motion to Quash and for Protective Order**,
*in* Malibu Media, LLC v Doe,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

subscriber (Mr. Riddell) as the porn trafficker – much to Mr. Riddell's surprise. Because Riddell had done nothing at all illegal.

As it turned out, the porn trafficking actually was being done by another person, completely without the knowledge or approval of Mr. Riddell. More than two city blocks away from Mr. Riddell's condominium, working from a boat in a marina, another man – reported in the press to be named Mark Brown – had acquired a signal from Mr. Riddell's wireless network, and was using Mr. Riddell's internet bandwidth, completely without the knowledge or approval of Mr. Riddell. This is not an anomalous fact-pattern, but is merely a particularly striking illustration of a common mistake that is often made.

In truth, discovering the identities of cable subscribers is a completely different enterprise from nailing down the identities of the "Does" actually transmitting or receiving BitTorrent "packets" over the Internet. The reason that this difference makes perfect sense is that anybody smart enough to learn about BitTorrent, and how to use it, also is smart enough to figure out on their own (or to learn from a multitude of fora published on the Internet), never to use their own cable accounts to download content that might potentially trigger litigation. With this reality in mind, it is hardly surprising that a large portion of the subscribers whose addresses are sought, simply are not the downloaders.

Indeed, in this case, the Plaintiff candidly admits that the whole reason a subpoena has been sought, is precisely because the identity of the accused infringer is not known, and because Plaintiff is unable to ascertain the identity of the alleged infringer. See Doc. Ent. 3, Memorandum in Support of Motion For Leave to Serve Subpoena.

For Plaintiff to turn around, despite Plaintiff's utter lack of knowledge and evidence

-7-

Motion to Quash and for Protective Order,
in Malibu Media, LLC v Doe,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

on the subject, and to claim that the Subscriber purportedly is the "most likely" infringer, is nothing other than sheer speculation without any evidentiary support at all. Plaintiff just made it up, and did not properly disclose the truth of Plaintiff's own utter ignorance to this honorable Court. Nor did Plaintiff make candid, balanced, and accurate disclosure to this Court, of what Plaintiff's counsel already knows about the ubiquity of open and poorly secured wireless networks, all over the United States, including West Michigan.

In short, the Plaintiff actually does not have any present factual basis – sufficient to satisfy the requirements of FED. R. CIV. P. 11 – to make the bold accusation that either the Subscriber or the Spouse is the accused infringer, as opposed to merely somebody whose cable account happened to be used by a third-party infringer, whose identity may never be known. Moreover, the Plaintiff carefully fails to disclose that mere discovery of a subscriber's identity – in this case, or in any BitTorrent case – does not automatically, or even with any reasonable 'false positive" error rate, result in the disclosure of the identity of any accused infringer. Indeed, other attorneys employing what has been termed a "copyright troll" business model, elsewhere have candidly acknowledged, a high rate of "false positives." See, e.g., Digital Sin, Inc. v. Does 1–176, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded 'My Little Panties # 2.' The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material.") (emphasis added); see also Patrick Collins, Inc. v. John Doe 1, __ F. Supp. 2d __, 2013 WL 2177787, at *3

-8-

Motion to Quash and for Protective Order,
in Malibu Media, LLC v Doe,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

(E.D.N.Y. 2013). Accordingly, in a material number of cases, compromising the subscriber's identity, is likely to turn out to be futile – harming only the subscriber's privacy, while not benefitting the plaintiff in any way.

Even worse, we have direct experience with Malibu Media and Mr. Nicolletti's other client, Patrick Collins, being indiscriminate as to whether they are collecting money from the real downloader, or just an innocent subscriber. Other attorneys have reported the same thing, such as the affidavits filed in Malibu Media, LLC v. Maness, No. 1:12-cv-01873 (D. Co. *filed* July 18, 2012) (see Doc. Ent. 22, exhibits 1 and 2). The repeated behavior of the lawyers representing these companies suggests that they just want to get paid, and they don't really care who pays. Although recently Malibu Media appears to have backed off somewhat on the assertion of legally unsupportable "negligence" claims[1] as a rationale for seeking to shake down subscribers, whether or not they did any download, the reality on the ground is that Malibu in practice still continues misleadingly to conflate the concepts of "Doe" and subscriber in court papers while, in dealing with its targets through out-of-court communications, Malibu continues to maintain an unreasonable guilty-until-proven-innocent posture, and continues to be indiscriminate as to who ought to pay the very large demands

---

[1] This "negligence" theory always has been without legal merit. Liberty Media Holdings v. Tabora, No. 12 Civ. 2234 (LAK), 2012 WL 2711381 (S.D.N.Y. July 9, 2012) (rejecting "negligence" theory); AF Holdings v. Hatfield, No. 12–CV–2049, 2012 WL 3835102, at *3 (N.D. Cal. Sep. 5, 2012) (rejecting "negligence" theory); see also Patrick Collins, Inc. v. Doe 1, 288 F.R.D. 233, 238 (E.D.N.Y. 2012) ("If the Court were to hold internet account holders responsible for any interlopers and guests who might infringe on the Plaintiff's work, the Court would essentially be imposing a duty that every home internet user vigilantly guard their wireless network. The Court declines to impose such a duty.").

-9-

**Motion to Quash and for Protective Order**,
*in* Malibu Media, LLC v Doe,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

that Malibu continues to make.

Under the circumstances, we respectfully suggest that the Court ought to revisit the Plaintiff's motion seeking a subpoena, and reasonably question whether Plaintiff actually presented evidence – or mere speculation pulled out of the air – on the subject of whether the disclosure of <u>the Subscriber's</u> identity, has anything to do with the accused infringer's identity. We respectfully suggest that the Plaintiff made no evidentiary showing whatsoever, and relied solely on speculation and conjecture, without basis in fact.

In the alternative, the Subscriber and Spouse respectfully move for a Protective Order under Rule 37(c) of the FEDERAL RULES OF CIVIL PROCEDURE. Rule 37(c) gives this honorable Court broad leeway to manage ths scope, timing, and sequence of discovery, including the issuance of orders:

    (A)    forbidding the disclosure or discovery;

    (B)    specifying terms, including time and place, for the disclosure or discovery;

    (C)    prescribing a discovery method other than the one selected by the party seeking discovery;

    (D)    forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

    (E)    designating the persons who may be present while the discovery is conducted;

    (F)    requiring that a deposition be sealed and opened only on court order;

    (G)    requiring that a trade secret or other confidential research, development,

-10-

**Motion to Quash and for Protective Order**, *in* <u>Malibu Media, LLC v Doe</u>, C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

    or commercial information not be revealed or be revealed only in a specified way; and

 (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

FED. R. CIV. P. 37(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."). The court's powers include, but are not limited to, the above list of examples.

 We respectfully suggest that the more informative way to proceed with discovery – given the infrequent rate at which discovery actually is taken from the "adult entertainment" companies that are filing most of the mass copyright lawsuits all over the country – is for the Court to exercise control over the timing and sequence of discovery, by requiring the Plaintiff to answer a few questions about its own business practices, as a prerequisite for moving forward with identity discovery. In other words, let's let the Plaintiff go first, this time.

 We think it would be helpful, and informative, to make the so-called "expert" that feeds IP addresses to the Plaintiff (we understand this company is called IPP Limited), to make some disclosures on the subject of whether its investigative methods actually meet the <u>Daubert</u> standard for reliability. The billing or compensation arrangements between the Plaintiff, the Plaintiff's lawyers, and the so-called investigative "expert," also would be of considerable interest. In particular, to the extent that the Lipscomb enterprise, managed out of Florida, now is using local counsel to file lawsuits in Michigan, it is worth inquiring whether the compensation arrangements actually conform to Rule 1.5 of the Michigan Rules of Professional Conduct, and the guidance issued by the State Bar of Michigan, as to attorney

-11-

**Motion to Quash and for Protective Order**,
*in* <u>Malibu Media, LLC v Doe</u>,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

compensation. This is a serious inquiry, given the revelations recently that at least some attorneys representing "adult entertainment" companies in copyright cases, are receiving compensation on a 70% contingency-fee basis, or even higher.

We are especially eager to learn more about the persistent rumors that have come to our attention about "adult entertainment" titles on which copyright plaintiffs claim ownership, reportedly being "seeded" onto Bit Torrent. Similarly, a subject worth inquiring about is how much of Plaintiff's revenue stream comes from paid subscriptions, how much from advertising revenue derived from free-of-charge so-called "tube" sites, that stream X-Art movies for free (Malibu Media distributes most of its titles using the trade name "X-Art"), and how much revenue is generated from settlements in BitTorrent cases. We also have several other lines of questioning prepared for the Plaintiff, based on past professional interest in tobacco and gaming industry litigation.

Like tobacco companies and casino gaming enterprises, we anticipate that the Plaintiff, and other "adult entertainment" producers, gather detailed information about their customers – especially the most reliable and frequent customers, who tend to be the most profitable – in the case of "adult entertainment," by tracking "mouse clicks" on the Internet with amazing granularity. We anticipate that this data is used to adjust and optimize the product, so as to maximize customer loyalty. We do not think it is by accident that certain segments of certain industries – whether it be "safe cigarettes," or high-end casinos for "high rollers," or "glam porn" – are tailored to present a more attractive public relations front, for an industry that in reality (from top to bottom) amounts to little more than manipulating the dopamine reward system in the brain, to keep the heaviest-using customers coming back to

-12-

**Motion to Quash and for Protective Order**,
*in* Malibu Media, LLC v Doe,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

pay and pay again, like subjects in a BF Skinner experiment, seeking the reinforcement of another reward.  <u>See</u>  < http://www.youtube.com/watch?feature=player_embedded&v=wSF82AwSDiU >; < http://yourbrainonporn.com/ >.

Incidentally, it bears mentioning that the U.S. Constitution contains the founders' <u>reason</u> for recognizing copyright in the first place.  The <u>reason</u> why Congress has the power "for limited times" to "secur[e] . . . to Authors and Inventors the exclusive Right to their respective Writings and Discoveries," is "[t]o promote the Progress of Science and useful Arts," not to protect the business and revenue model of pornographers and their contingent-fee lawyers.  We continue waiting for some explanation – any explanation at all – for what X-Art, Malibu Media, or the pornography industry generally, ever has done to "promote the Progress of Science and useful Arts."  Quite the contrary, like tobacco, this is a harmful product, with adverse side effects on the consuming public, <u>see</u>, <u>e.g.</u>, < http://blog.ted.com/2009/12/02/cindy_gallop_ma/ >, and with negative consequences that scale up, the more the content is consumed.  It is puzzling in the extreme to see the Plaintiff attempt to argue that moral opprobrium ought to be directed at downloaders (who have access to more than enough substitute content completely without charge – including copious amounts of X-Art content – via "tube" sites), rather than at the people who are mass-producing a harmful product.

We respectfully suggest that reasonable and focused discovery, into the business operations of X-Art, its "tube" site affiliates (where, again, much of the "content" produced by Malibu Media is given away for free), and Malibu Media, may well help shine an entirely

-13-

**Motion to Quash and for Protective Order**,
*in* Malibu Media, LLC v Doe,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

new light on this lawsuit, and dozens or hundreds of lawsuits like it, clogging up dockets in this state and elsewhere.

Whether or not the Court elects to allow the Subscriber and Spouse to take discovery first, or allows discovery in both directions, or merely focuses on the question of whether it is possible to ascertain the identity of the actual accused infringer, we respectfully suggest that none of these things – now that the Subscriber has legal counsel – actually requires disclosure of the Subscriber's identity.  Disclosure of the Subscriber's identity accomplishes nothing other than to enable the Plaintiff to exercise improper coercive pressure, through the threat of exposing the Subscriber to public opprobrium, not based on proof, but based on the making of mere allegations.

We prefer not to elaborate on any details, but the Subscriber has important and material career-related reasons why the Subscriber seeks to avoid having his or her name associated with <u>any</u> lawsuit (let alone <u>this</u> kind of lawsuit, and let alone whether the lawsuit actually has any merit, or not).

Again, we respectfully believe that it should easily be possible to ascertain all the necessary facts on the subject of whether the accused infringer's identity can be discovered, while still taking reasonable care to protect the Subscriber's identity to the maximum possible degree.  The Michigan Court of Appeals, in <u>Thomas M. Cooley Law School v. John Doe 1</u>, __ N.W.2d __, 2013 WL 1363885, at V.B - V.C (Mich. Ct. App. Apr. 4, 2013), recently explained how the careful crafting of a protective order, could enable a case to be litigated all the way through the summary disposition stage, without revealing the identity of the "Doe" in that case.  Similar safeguards easily could be crafted, especially with counsel

-14-

**Motion to Quash and for Protective Order**,
*in* <u>Malibu Media, LLC v Doe</u>,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

involved who have experience with protective orders in a variety of contexts, to enable this case to be resolved at least up through a much more advanced stage of proceedings, than simply disclosing the Subscriber's identity based on nothing more than the Plaintiff's speculation and say-so.

For the reasons set forth above, therefore, the Subscriber and his or her Spouse, respectfully move to quash or modify the subpoena against Comcast, and respectfully move for a protective order, so as to enable facts that are actually relevant to this case to be ascertained on an anonymous basis, to the maximum degree possible.

The moving parties also request a reasonable extension of time, so as to supplement the briefing on these issues, with additional precedent and authority.

Respectfully submitted,

Dated: May 30, 2013

    /s/ Eric C. Grimm
ERIC C. GRIMM (P58990)
WILLIAMS | HUGHES, PLLC
Attorneys for Movants Comcast Subscriber Alpha and Spouse
120 West Apple Avenue
P.O. Box 599
Muskegon, MI 49443-0599
231.728.1111
Fax: 231.727.2111
Email:
ecgrimm@williamshugheslaw.com

-15-

**Motion to Quash and for Protective Order**,
in Malibu Media, LLC v Doe,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).

## CERTIFICATE OF SERVICE

      I certify that the foregoing Motion For Extension of Time, Motion to Quash or Modify Subpoena, and Motion for Protective Order, was filed through the Court's ECF system on May 30, 2013, and that it is being automatically served on all counsel of record through the ECF system.

      Respectfully submitted,

      /s/ Eric C. Grimm
      ERIC C. GRIMM (P58990)
      WILLIAMS | HUGHES, PLLC
      Attorneys for Movants Comcast Subscriber Alpha and Spouse
      120 West Apple Avenue
      P.O. Box 599
      Muskegon, MI 49443-0599
      231.728.1111
      Fax: 231.727.2111
      Email:
      ecgrimm@williamshugheslaw.com

-16-

**Motion to Quash and for Protective Order**,
*in* <u>Malibu Media, LLC v Doe</u>,
C.A. No. 1:13-cv-00364-RJJ (W.D. Mi.).